# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 319 | **DATE** | 3/28/2001 |
| **CASE TITLE** | USA vs. Gary Esterman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Esterman's position on the forfeiture issue is soundly supported by the only authorities that have looked at the issue in comparable terms. This Court vacates the verdict that forms the predicate for any potential forfeiture by Esterman.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 9 2001 date docketed | 38 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SN | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
       v.                      )    No. 00 CR 319  DOCKETED
                               )
GARY ESTERMAN,                 )                   MAR 29 2001
                               )
            Defendant.         )

MEMORANDUM OPINION AND ORDER

Following a jury trial in which Gary Esterman ("Esterman") was found guilty of each offense charged in a multi-count indictment, Esterman's counsel has attacked the jury's Special Verdict Forfeiture Form on the ground that Esterman's criminal conduct did not "affect[ ] a financial institution," as required for forfeiture under 18 U.S.C. §982(a)(2)(A).[1] Both sides have submitted memoranda on the subject, making the issue ripe for decision.

This memorandum opinion and order of course accepts the jury's determination that Esterman has been proved to have committed wire fraud under Section 1343 on more than one occasion. Those offenses involved this criminal activity:

   1. Count One charged--and Esterman was found to have engaged in--a scheme to swindle Russian businessman Igor Sivokozov ("Sivokozov") of his money by setting up a bank

---

[1] All further references to Title 18's provisions will simply take the form "Section--."

account at Edens Bank from which, without Sivokozov's knowledge (Esterman having taken advantage of Sivokozov's lack of understanding of the English language), Esterman could withdraw funds. Esterman is a Russian native living in the Chicago area, and he is fluent in both Russian and English. Although Sivokozov's intention was to open the account in his name alone, Esterman (whom Sivokozov relied on to make the bank arrangements) set up the account as a joint account, with either of the two able to withdraw any funds on deposit. As a specific act of wire fraud in implementation of Esterman's scheme, Count One charged him with having caused a wire transfer of $299,975 ($300,000 less a small handling charge) from a New York bank to the Edens Bank (that transfer set things up so that Esterman could then quickly empty the account of those deposited funds without Sivokozov's knowledge--that is, until it was too late for him to prevent the fraudulent withdrawal).

  2. Count Two incorporated the scheme allegations from Count One and then charged another act of wire fraud. This one involved a wire transfer of just over $5,000 by Esterman from Edens Bank to another New York bank (that was part of Esterman's milking of the account).

With Esterman having been found guilty of both of those charges, the indictment's forfeiture allegation seeks $638,540 as

Esterman's asserted ill-gotten gains from the wire fraud.

This opinion will leave aside, without seeking to resolve, what would seem to be a conceptual difficulty in quantifying the claimed over-$600,000 figure as "proceeds obtained directly or indirectly from wire fraud" (the forfeiture allegation's language) that embraced only the two transactions of far lesser amounts charged in Counts One and Two. Instead Esterman's counsel launches a frontal attack on the ground that while Esterman's culpable conduct certainly affected Sivokozov, it did not affect Edens Bank as Section 982(a)(2)(A) requires. Unfortunately defense counsel did not provide authorities dealing with that issue before trial, else the issue might never have been tendered to the jury.[2]

Whether a fraud does or does not "affect a financial institution" is a recurring consideration in federal criminal jurisprudence--that phrase makes a difference not only under Section 982(a)(2)(A) but also in statute of limitations terms under Sections 3282 and 3293(2) (under the latter statute, the normal five-year statute of limitations is doubled "if the [wire

---

[2] Defendant's post-trial Mem. 1-2 says in part:

> Your Honor did, during trial, discover the parallel line of cases which we seek to develop in this memorandum. We recognize the scholarship of your Honor's staff in finding precedent which counsel should have discovered before trial.

3

fraud] offense affects a financial institution"), and the phrase also bears upon the classification of certain offenses for sentencing purposes and Sentencing Guideline considerations. Although neither side has adduced any Seventh Circuit authority addressing the subject, just during the past year two other Courts of Appeals have given the phrase the common sense reading that there must be some adverse impact on the financial institution itself to meet that standard.

Thus <u>United States v. Ubakanma</u>, 215 F.3d 421 (4th Cir. 2000), addressing a situation entirely comparable to Esterman's in analytic terms, rejected the applicability of the far stiffer sentencing provision that Section 1343 specifies for wire fraud that "affects a financial institution." Ubakanma, <u>id</u>. at 426 contrasted the situation before the court with cases that had the requisite impact on the institution itself:

> The stipulated facts underlying the wire fraud
> offenses, set forth in each of the plea agreements,
> demonstrate that the funds involved in the fraud scheme
> were transferred into and out of accounts at various
> financial institutions. However, there are no facts
> indicating that the financial institutions themselves
> were harmed or victimized in any way, or that they were
> intended to be so harmed or victimized by the fraud
> scheme. The district court correctly concluded during
> Ubakanma's sentencing hearing that a wire fraud offense
> under section 1343 "affected" a financial institution
> only if the institution itself were victimized by the
> fraud, as opposed to the scheme's mere utilization of
> the financial institution in the transfer of funds.

To the identical effect, <u>United States v. Agne</u>, 214 F.3d 47, 51 (1st Cir. 2000) initially held that the identical statutory

4

phrase in the limitations statute (Section 3293(2)) was unambiguous in that respect:

> Our first reference point is the statutory language. See Greebel v. FTP Software, Inc., 194 F.3d 185, 192 (1st Cir. 1999); see also [United States v.] Rivera, 131 F.3d [222,] 224 [(1st Cir. 1999)] ("When the 'plain meaning' is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" (citation omitted)). No definition of "affect" is found in the statute. Its dictionary definition is "to act on; produce an effect or change in." The Random House Dictionary of the English Language 33 (2d ed. 1983). Its synonyms are listed as "influence, sway; modify, alter," id., lending support to defendant's position that there must be some negative consequence to the financial institution to invoke the extended statute of limitations.

And then having distinguished situations in which "the financial institution presumably suffered a loss or at the very least was exposed to a high risk of loss as a result of defendant's commission of fraud" (id. at 51-52), the Court said (id. at 52):

> The court in [United States v.] Pelullo [, 964 F.2d 193 (3d Cir. 1992)] recognized that there was, however, a limit to the statute's reach, noting that the effect on the bank would be too attenuated to invoke the statute in certain circumstances, for example, "if the fraud was directed against a customer of the depository institution which was then prejudiced in its dealings with the institution." Pelullo, 964 F.2d at 216. We agree that at minimum there needs to be some impact on the financial institution to support a conviction.

It is really unnecessary to cite the sharply different cases (in addition to those distinguished in Ubakanma and Agne) that have found the requisite wire fraud as having "affect[ed] a financial institution." Suffice it to say that every one of those situations contrasts dramatically with that presented here,

5

in which Esterman defrauded bank customer Sivokozov but his depredations did not have any cognizable impact on Edens Bank itself.

Against that uniform and eminently sensible reading of the statutory language, the government cannot offer even an argument based on common sense, let alone any meaningful authority. Each of the cases that the United States cites involved a real-world impact on the financial institution involved as contrasted with the situation here, where Edens Bank was called upon to do nothing more than to honor the authorizations that were wholly regular from the bank's perspective, conforming to the express terms of the signature cards that had been delivered to the bank.

To adopt the government's position would be to hold that Bank One is somehow "affected" by paying out on a check properly drawn by Mrs. Shadur on our joint checking account there. And as for the government's contention that it is somehow inappropriate to create an implied insertion of a term such as "adversely" to qualify "affecting," that is really nonsensical. What courts such as the First and Fourth Circuits have done in that respect doesn't change the statutory meaning at all--it simply reflects that "affecting" means "having an impact on," and that in turn requires a showing of either an unfavorable or favorable impact from the wire fraud (with the latter of course being an extraordinary possibility).

In sum, Esterman's position on the forfeiture issue is soundly supported by the only authorities that have looked at the issue in comparable terms. This Court vacates the verdict that forms the predicate for any potential forfeiture by Esterman.

                                                          /s/ Milton I. Shadur
                                            Milton I. Shadur
                                            Senior United States District Judge

Date: March 28, 2001